IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ANTHONY MAURICE SMALLS,

        Plaintiff,

vs.                  Case No. 10-3025-JTM

SCOTT P. STERMER ET. AL.,

        Defendants.

MEMORANDUM AND ORDER

Presently before this court are the following motions: Defendant J. Michael Stouffer's Motion to Dismiss Amended Complaint (Dkt. No. 99); defendant Scott P. Stermer's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. No. 101); and defendants Steven Conry, D.T. Hininger, Charlie Martin, and Shelton Richardson's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Dkt. No. 104).[1] Plaintiff has filed Motions to Dismiss or Motions for Summary Judgment against all defendants (Dkt Nos. 50, 53, 54, 59, 63, 89, 92). Plaintiff also filed an Emergency Motion to Order Execution of Plaintiff's Injunctive Relief (Dkt. No. 94).

---

[1]Defendant Stouffer filed a Motion to Dismiss (Dkt. No. 25), Defendants Hininger, Conry, Martin, and Richardson filed a Motion to Dismiss (Dkt. No. 70), and defendant Stermer filed a Motion to Dismiss or in the alternative for Summary Judgment (Dkt. No. 81). All these motions were based on the original Complaint and have been incorporated into the present motions.

    Plaintiff also filed several pleadings, such as: Motion by Plaintiff to Deny Stouffer's Motion on the Basis of Qualified Immunity (Dkt. No. 30); Motion by Plaintiff to Deny Defendant Scott P. Stermer's Summary Judgment Pursuant to FRCP 56(c) (Dkt. No. 87); Motion by Plaintiff to Deny all Dismissals of Plaintiff's Lawsuit and Deny all Summary Judgments to Plaintiffs Lawsuit by Defendants: Stermer, Hininger, Conry, Martin, Richardson, Stouffer (Dkt. No. 103). These "motions" are more appropriately viewed as Responses and will be treated as such by the court.

To prevail on a 42 U.S.C. § 1983 claim, the plaintiff must show that he "suffered a deprivation of a federally protected right." *Crown Point I, L.L.C. v. Intermountain Rural Electric Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003). Because plaintiff is proceeding pro se, this court construes his arguments liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005). "[The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). "The broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). For the following reasons, the court grants the defendants' motions and denies plaintiff's motions.

## I. Factual Background

The plaintiff, Anthony Maurice Smalls, is currently a prisoner in the state of Maryland. This case involves his eleven-month incarceration in Kansas at the Leavenworth Detention Center (LDC). The defendants in this action are four private individuals employed by the Corrections Corporation of America (CCA), one federal, and one state official. Specifically, defendants are: Scott P. Stermer, Assistant Trustee, Department of Justice, Office of Federal Detention Trustee; D.T. Hininger, Representative, CCA; Steven Conry, Representative, CCA; Charlie Martin, Representative, CCA; Shelton Richardson, Warden, CCA-Leavenworth; and J. Michael Stouffer, Commissioner, Maryland Division of Corrections. The plaintiff has sued all defendants in their individual and official capacities.

Effective July 1, 2007, the Maryland Department of Public Safety and Correctional Services (MDPSCS) entered into Intergovernmental Agreement ODT-1-8-0007 with the United States Marshall Service (USMS). This agreement allowed the USMS to house federal detainees with the MDPSCS for a per-diem rate. On July 23, 2008, MDPSCS and the Department of Justice (DOJ) modified this contract, permitting the MDPSCS to transfer up to 48 Maryland inmates into the custody of the federal government to be housed at any facility operated by the CCA. Further, the federal government had authority under the contract to relocate Maryland prisoners from one federal prison to another "when appropriate" after notifying MDPSCS. Defendants Stouffer and Stermer signed this contract and modification.

Also, on July 23, 2008, the DOJ and USMS modified contract ODT-7-C-0002 they had with the CCA. The modification provided for the transfer of the Maryland prisoners (including plaintiff) to the LDC. The modification also gave the CCA the ability to refuse any Maryland inmate it deemed inappropriate for housing at the LDC. Only Hininger and Stermer signed this contract.

Plaintiff was transferred from a state prison in Maryland to the LDC on June 2, 2009, and placed in administrative segregation based on an incident involving an attack on prison staff by other Maryland inmates that occurred before plaintiff had arrived. Plaintiff filed an Informal Resolution on August 28, 2009, challenging his administrative segregation and argued he was being denied access to the Maryland Courts. His request for relief was denied on September 15, 2009. Thereafter, on September 28, 2009, plaintiff completed a Formal Inmate/Resident Grievance again arguing the illegality of his housing situation and that he was being denied access to the courts. Plaintiff also submitted an Information Request on September 10. Richardson addressed plaintiff's concerns by visiting him at his cell. Richardson also informed plaintiff that his attorney was working on a

response to plaintiff's grievance. On or about May 12, 2010, plaintiff was returned to the custody of Maryland corrections authorities and currently resides at the North Branch Correctional Institution in Cumberland, Maryland.

On February 3, 2010, plaintiff filed the present action alleging violations of 42 U.S.C. § 1983 stemming from his temporary incarceration at the LDC in Leavenworth, Kansas. Subsequently, on February 16, 2010, plaintiff filed a Motion for Leave to Amend Complaint (Dkt. No. 4) and a Motion to Amend Complaint (Dkt. No. 9), on February 26. On March 4, 2010, plaintiff filed a Second Motion to Amend Complaint (Dkt. No. 10), which the court granted, and plaintiff filed his Amended Complaint. On August 30, 2010, plaintiff again filed a Motion to Amend Complaint (Dkt. Nos. 84 and 85). The court granted the motion (Dkt. No. 96) and plaintiff filed his Second Amended Complaint on October 28, 2010 (Dkt. No. 98). Defendants then filed dispositive motions and plaintiff once again filed a Motion to Amend Complaint (Dkt. No. 110). The court ordered plaintiff to file a detailed statement of any and all additional facts supporting claims already asserted against the defendants relating to plaintiff's incarceration at the LDC as well as any further facts plaintiff would raise in support of any claim known or ascertainable. Plaintiff responded and stated he had no further facts to add, thus, his Motion to Amend Complaint (Dkt. No. 110) is denied.

In plaintiff's Second Amended Complaint, he alleges that defendants violated his Fourteenth Amendment rights to due process and equal protection by denying him equal access to the courts and by housing him in administrative segregation while in the LDC. Specifically, plaintiff contends that Richardson violated his constitutional rights because he failed to oversee plaintiff's problems in accessing the court and by allowing a disruptive inmate to keep law books in his possession. Plaintiff also contends that Richardson violated his equal protection rights by housing him in administrative

segregation. Plaintiff contends that Stouffer, Hininger, and Stermer are liable under a respondeat superior theory because they signed the contracts between the MDPSCS and USMS or the contract between the DOJ, USMS, and CCA. Last, plaintiff claims Conry and Martin are liable because they are CCA officials even though they did not sign the contracts at issue.

The present issues for consideration are contained in the several motions made by the parties.

## II. Conclusions of Law

*A. Personal Jurisdiction Over Stermer and Stouffer*

1. Legal Standard

"The standard that governs a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well established: The plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Edison Trust Number One v. Patillo*, No. 10-1159, 2010 WL 5093831, at *1 (D. Kan. Dec. 8, 2010) (quotations omitted). The extent of the burden depends on the stage at which the court considers the jurisdictional issue. *Id.* When personal jurisdiction "is decided at a preliminary stage by reference to only the complaint and affidavits, the plaintiff need only make a prima facie showing of personal jurisdiction." *Id.* "The plaintiff may carry this burden 'by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant.'" *Id.* (quoting *TH Agric. & Nutrition, L.L.C. v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007)). All factual disputes are resolved in plaintiff's favor. *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

When determining whether a federal court in a federal question case has personal jurisdiction over a defendant, the court must determine, "'(1) whether the applicable statute potentially confers

jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process.'" *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). "Because 42 U.S.C. § 1983 does not, by itself, confer nationwide service of process or jurisdiction upon federal district courts to adjudicate claims, Fed. R. Civ. P. 4(k)(1)(A) refers us to the" [Kansas] long-arm statute, which is coextensive with constitutional limitations imposed by the Due Process Clause. *Trujillo*, 465 F.3d at 1217; *Edison Trust Number One*, 2010 WL 5093831, at *3.[2]

---

[2]Kan. Stat. Ann. § 60-308 provides in part:
(b) Submitting to jurisdiction. (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent or instrumentality does any of the following acts, thereby submits the person and, if an individual, the individual's representative, to the jurisdiction of the courts of this state for any claim for relief arising from the act:
    (A) Transacting any business in this state;
    (B) committing a tortious act in this state;
    (C) owning, using or possessing real estate located in this state;
    (D) contracting to insure any person, property or risk located in this state at the time of contracting;
    (E) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state;
    (F) acting in this state as director, manager, trustee or other officer of any corporation organized under the laws of or having a place of business in this state or as executor or administrator of any estate in this state;
    (G) causing to persons or property in this state an injury arising out of an act or omission outside this state by the defendant if, at the time of the injury, either:
        (I) The defendant was engaged in solicitation or service activities in this state; or
        (ii) products, materials or things processed, serviced or manufactured by the defendant anywhere were used or consumed in this state in the ordinary course of trade or use;
    (H) living in a marital relationship in this state notwithstanding subsequent departure from this state, for all obligations arising for maintenance, child support or property settlement under article 16 of this chapter, if the other party to the marital relationship continues to reside in this state;
    (I) serving as insurer of a person at the time of an act by the person which is the subject of an action in a court of competent jurisdiction in this state which results in judgment being taken against the person;
    (J) having sexual intercourse in this state, in an action seeking to adjudge the person to be a parent of a child and in an action to require the person to provide support for a child as provided by law, if: (I) The conception of the child results from the act; and (ii) the other party to the act or the child continues to reside in this state;
    (K) entering into an express or implied arrangement, whether by contract, tariff or otherwise, with a corporation or partnership residing or doing business in this state under which the corporation or partnership has supplied transportation services or communication service or equipment, including telephonic communication services, for a business or commercial user when the services supplied to the user are managed, operated or monitored in this state, provided that the person is given reasonable notice that arranging or continuing the transportation services or communication

The due process analysis consists of two steps: (1) whether the defendants have such minimum contacts with the forum state that they should reasonably anticipate being haled into court there; and (2) if the defendants have minimum contacts with the forum state, whether exercising personal jurisdiction over them would offend traditional notions of fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998); *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008).

2. Minimum Contacts

The exercise of personal jurisdiction over a nonresident defendant comports with due process "so long as there exists 'minimum contacts' between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The minimum contacts necessary for specific personal jurisdiction are established when "the defendant has 'purposefully directed' its activities toward the forum jurisdiction and where the underlying action is based upon activities that arise out of or relate to the defendant's contacts with the forum." *In re application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[3] "Purposeful availment requires actions by the Defendant

---

services may result in jurisdiction under this section; or
    (L) having contact with this state which would support jurisdiction consistent with the constitutions of the United States and of this state.
(2) A person submits to the jurisdiction of the courts of this state for a claim for relief which did not arise in this state if substantial, continuous and systematic contact with this state is established which would support jurisdiction consistent with the constitutions of the United States and of this state.
KAN. STAT. ANN. § 60-308(b) (2010).

[3]Minimum contacts may also be established, and a court may maintain general jurisdiction of over a nonresident defendant, based on the defendant's "continuous and systematic" general business contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). Nothing in plaintiff's

which create a substantial connection with the forum state." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1160 (10th Cir. 2010) (quotations omitted). The purposeful availment requirement is to "ensure[] that a defendant will not be subject to the laws of a jurisdiction 'solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person.'" *AST Sports Sci.*, 514 F.3d at 1058 (quoting *Benally v. Amon Carter Museum of W. Art.*, 858 F.2d 618, 625 (10th Cir. 1988)). "Purposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state." *Rambo v. Am. S. Ins., Co.*, 839 F.2d 1415, 1420 (10th Cir. 1988) (quotations omitted).

### a. Stouffer

Stouffer, who resides in Maryland, did not have sufficient "minimum contacts" with Kansas necessary for personal jurisdiction. The MDPSCS entered into the original contract, ODT-1-8-0007 and Modification No. 2 with the USMS and the DOJ, Office of Federal Detention Trustee. Stouffer signed only the modification, which provided that Maryland state prisoners could be housed in federal detention facilities, but did not specifically require plaintiff to be housed at the LDC. Stouffer did not sign the contract which transferred plaintiff to the LDC. Stouffer's action of signing Modification No. 2 does not constitute the purposeful availment toward Kansas, which is necessary to establish personal jurisdiction. *See Pro Axcess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270,

---

Amended Complaint indicates that Stermer or Stouffer were engaged in continuous and systematic activity in Kansas, and this court does not believe plaintiff could allege such facts. Thus, the court concludes general personal jurisdiction is lacking.

1277 (10th Cir. 2005) (holding jurisdiction in Utah over out-of-state defendants was proper, in part, because "services necessary for the contract were to be performed in [the forum state]"). Neither Stouffer nor the MDPSCS were a party to the contract that placed plaintiff at the LDC. And, even if the MDPSCS was a party, the fact of the contract alone would not be enough to support personal jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 790 (1984) ("[Employees' contacts with a forum] are not to be judged according to their employer's activities there . . . . Each defendant's contacts with the forum State must be assessed individually."); *see also Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[J]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him.").

It appears the only contacts Stouffer did have with Kansas came in the form of periodic reports on Maryland inmates sent by the LDC to the MDPSCS. However, this contact by itself is also not enough to support personal jurisdiction. The Court in *Burger King* did state that the "fair warning requirement [necessary for specific personal jurisdiction] is satisfied if the defendant has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." 471 U.S. at 472. However, "this oft-quoted statement does not stand for the proposition that *any* contact with a resident of a forum is sufficient to establish minimum contacts with that forum." *Trujillo*, 465 F.3d at 1219 (emphasis in original). "Instead, 'it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities *within the forum State*, thus invoking the benefits and protections of its laws.'" *Id.* (quoting *Burger King*, 471 U.S. at 475) (emphasis in *Trujillo*). "It is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995).

Likewise, communications between the defendant and a person or entity located in the forum state are not sufficient on their own. *See Lewis v. Center Market*, 378 Fed. App'x 780, 787 (10th Cir. 2010) (holding communications between New Mexico plaintiff and out-of-state insurer were not enough to establish personal jurisdiction in New Mexico); *Soma Med. Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999) (holding defendant's faxes and other written communications concerning an account were not sufficient to establish minimum contacts).[4] The periodic reports received by the MDPSCS were not solicited by Stouffer, rather they were sent as a result of a provision in the contract requiring such reporting. It is clear that neither the contracts at issue nor the limited communications between the LDC and MDPSCS constitute sufficient minimum contacts necessary to support personal jurisdiction over Stouffer. Therefore, this court may not exercise personal jurisdiction over Stouffer.

### b. Stermer

Stermer resides in the Washington D.C. area. The conduct giving rise to plaintiff's claims occurred in Kansas. The only contacts plaintiff alleges Stermer has with Kansas is that he signed all the contracts at issue on behalf of the DOJ, Office of the Federal Detention Trustee, which provided for plaintiff's incarceration in Kansas. It is clear that "[a] contract alone does not subject a nonresident defendant to the jurisdiction of the subject forum." *AST Sports Sci.*, 514 F.3d at 1059. Plaintiff does not allege, and it appears could not allege, that Stermer took any other action which "purposefully availed [himself] of the privilege of conducting activities in [Kansas]." *Hanson v.*

---

[4]It is unclear whether Stouffer personally received any communication from the LDC. If he did not, his contacts with Kansas would be even more attenuated. *See Calder v. Jones*, 465 U.S. 783, 790 (1984).

*Denckla*, 357 U.S. 235, 253 (1958). The minimum contacts necessary for this court to assert personal jurisdiction over Stermer simply are not present. Therefore, Stermer's act of signing the contracts, without more, cannot support personal jurisdiction over him in Kansas.

3. Fair Play and Substantial Justice

Plaintiff having failed to establish that Stouffer and Stermer have minimum contacts with Kansas, the court need not analyze whether the exercise of personal jurisdiction over Stouffer would offend "'traditional notions of fair play and substantial justice.'" *Soma*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999) (quoting *Asahi Metal Industry Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 113 (1987)). Nevertheless, even assuming defendants had minimum contacts with Kansas, assertion of personal jurisdiction over them would not "comport with fair play and substantial justice." *Burger King*, 471 U.S. at 476.

"If the defendant has minimum contacts with the forum state, 'we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice.'" *Bartile Roofs*, 618 F.3d at 1161 (quoting *AST Sports Sci.*, 514 F.3d at 1061). At this point in the analysis, the defendant bears the burden of proving other considerations would render jurisdiction unreasonable. *Id.* This reasonableness analysis requires weighing the following five factors:

> (1) the burden on the defendant, (2) the forum states interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient solution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Trujillo*, 465 F.3d at 1221 (quoting *Pro Axess*, 428 F.3d at 1279-80). "[T]he weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* (quotations and alterations omitted).

The balance of these factors weighs against allowing Kansas to exercise personal jurisdiction over Stouffer and Stermer. Kansas does have an interest in how its prisons are run. *See id.* However, the burden on each defendant, requiring them to litigate in Kansas, would overshadow any interest Kansas may claim. *See AST Sports Sci.*, 514 F.3d at 1061 ("The burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction.") (alterations and quotations omitted). Further, there is no reason to believe plaintiff need file in Kansas to receive convenient and effective relief for actions allegedly taken by defendants in Maryland and Washington D.C. *See Trujillo*, 465 F.3d at 1221-22. If plaintiff must file separate suits, Stouffer can be held to answer in Maryland and Stermer in Washington D.C. Regardless, to exercise of personal jurisdiction over them in Kansas would offend "traditional conceptions of fair play and substantial justice." *Burger King*, 471 U.S. at 464.

### 4. Dismissal or Transfer Under 28 U.S.C. § 1631

At this point, the court is faced with two options: dismiss plaintiff's claims against Stouffer and Stermer or transfer the case to the proper jurisdiction. The Tenth Circuit has recognized that 28 U.S.C. § 1631[5] controls the dismissal or transfer of cases due to a lack of personal jurisdiction. *See*

---

[5]Section 1631 provides:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed

*Trujillo*, 465 F.3d at 1223; *see also Griffin v. Daviess-Dekalb County Regional Jail*, No. 07-3090, 2007 WL 1347758, at *1 (D. Kan. May 8, 2007). When deciding whether to dismiss or transfer, a court looks at several factors, such as: whether the action would be time barred; whether the claims likely have merit; and whether the original action was filed in good faith rather than filed after "plaintiff either realized or should have realized that the forum in which he or she filed was improper." *Trujillo*, 465 F.3d at 1223 n.16 (quoting *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1544 (10th Cir. 1996)). However, before attempting an analysis under § 1631, there is an impediment to transfer in this case: Stouffer and Stermer reside in different jurisdictions, thus, there is no single jurisdiction in which to transfer the action. There are also four other defendants in this case, making it even less likely personal jurisdiction would be proper in just one jurisdiction. "We [Tenth Circuit] are aware of no authority even permitting, much less requiring, a district court to unilaterally split up an action and transfer the resultant components to diverse jurisdictions under the auspices of § 1631." *Shrader v. Biddinger*, —F.3d—, 2011 WL 678386, at *11 (10th Cir. 2011). Given these circumstances, the court dismisses this action against Stouffer and Stermer without prejudice.

*B. Hininger, Conry, Martin, and Richardson's Motion to Dismiss or in the Alternative for Summary Judgment*[6]

Because most of defendants' motion is based on the Complaint and refers to no documents outside it, the court decides all issues, except for the exhaustion of administrative remedies, under

---

for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred

28 U.S.C. § 1631 (2006).

[6]In this section the word "defendants" will refer to Hininger, Conry, Martin, and Richardson.

the motion to dismiss standard. *See Clopton v. TSS, Inc.*, No. 10-1229, 2011 WL 346478, at *2 (D. Kan. Feb. 2, 2011).

1. Legal Standard: 12(b)(6)

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant adequate notice of what the plaintiff's claim is and the grounds of that claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). This simplified notice pleading rule is justified because of the liberal discovery rules and availability of summary judgment to dispose of unmeritorious claims. *Id.*

"In reviewing a motion to dismiss, this court must look for plausibility in the complaint . . . . Under this standard, a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Corder v. Lewis Palmer Sch. Dist No. 38*, 566 F.3d 1219, 1223-24 (10th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (clarifying and affirming *Twombly's* probability standard). Allegations that raise the specter of mere speculation are not enough. *Corder*, 566 F.3d at 1223-24. The court must assume that all allegations in the complaint are true. *Iqbal*, 129 S. Ct. at 1936-37. However, a complaint that only states conclusions or a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "The issue in resolving a motion such as this is 'not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims.'" *Bean v. Norman*, No. 008-2422, 2010 WL 420057, at *2 (D. Kan. Jan. 29, 2010) (quoting

*Swierkiewicz*, 534 U.S. at 511). The Tenth Circuit utilizes a two step process when analyzing a motion to dismiss. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). First, the court must identify conclusory allegations not entitled to the assumption of truth. *Id.* Second, the court must determine whether the remaining factual allegations plausibly suggest the plaintiff is entitled to relief. *Id.*

### 2. Transfer to LDC

In his Complaint, plaintiff alleges a due process violation based solely on his transfer from Maryland to the LDC. Defendants, in their motion, argue plaintiff has no liberty interest in being incarcerated in any particular location and, thus, there is no due process violation.[7]

Plaintiff's due process violation on this basis must fail. The Supreme Court in *Olin v. Wakinekona*, stated "[j]ust as an inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State, he has no justifiable expectation that he will be incarcerated in any particular State." 461 U.S. 238, 245 (1983). The Court explained that the reality of state and federal prisons sometimes necessitates housing inmates in various locations outside the state in which they were convicted. *Id.* at 245-46. "In short, it is neither unreasonable nor unusual for an inmate to serve practically his entire sentence in a State other than the one in which he was convicted and sentenced, or to be transferred to an out-of-state prison after serving a portion of his sentence in his home State." *Id.* at 247. Thus, the transfer of a prisoner from one state to another "does not deprive an inmate of any liberty interest protected by the Due Process Clause in and of itself." *Id.*

---

[7]"A due process violation cannot occur unless a prisoner has been deprived of a constitutionally-protected property or liberty interest." *Hunter v. Ortiz*, 125 Fed. App'x 241, 243 (10th Cir. 2005) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972)).

at 248. Because plaintiff's claim contains precisely what the *Olin* Court foreclosed—a due process violation based solely on a transfer from one state to another—it is dismissed.

3. 42 U.S.C. § 1983

Defendants next argue plaintiff fails to state a claim under 42 U.S.C. § 1983. "To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Hininger, Conry, and Martin (representatives of the CCA), and Richardson (Warden of the LDC) argue plaintiff has failed to allege that they acted under color of state law because the conduct at issue occurred in a federal prison. In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the Supreme Court established a direct federal cause of action under the Constitution against federal officials for violations of federal constitutional rights. 403 U.S. 388 (1971). A *Bivens* claim is analogous to one under § 1983. *Springer v. Albin*, 398 Fed. App'x 427, 435 n.5 (10th Cir. 2010) ("A *Bivens* suit against a federal agent is the federal equivalent of a suit against State officials under § 1983.").[8] Construing plaintiff's Complaint liberally, his failure to sue under *Bivens* is not fatal.

Next, defendants argue they are not liable under § 1983 (*Bivens*) because they are private individuals who do not perform traditional state (federal) functions. Because defendants are all officials employed by a private corporation (CCA), they must show that their conduct is fairly attributable to the state (federal government); thus, constituting state action. *Lindsey v. Bowlin*, 557

---

[8] Because a *Bivens* suit and a § 1983 suit are equivalent, this court cites to both *Bivens* and § 1983 cases as authority. *See Springer v. Albin*, 398 Fed. App'x 427, 435 n.5 (10th Cir. 2010).

F. Supp.2d 1225, 1231 n.14 (D. Kan. 2008) (citing *Pino v. Higgs*, 75 F.3d 1461, 1465 (10th Cir. 1996)). "Conduct is 'fairly attributable' to the state if (1) the deprivation is caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the state; and (2) the private party acted together with or obtained significant aid from state officials or engaged in conduct otherwise chargeable to the state." *Id.* It is unnecessary to decide whether defendants' conduct is fairly attributable to the federal government because, as explained below, plaintiff fails to allege sufficient facts supporting defendants' liability.

To state a claim under § 1983 a plaintiff must contend that the defendants personally participated in the alleged constitutional violations. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). "A supervisor is not liable under § 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise." *Butler*, 992 F.2d at 1055. "A plaintiff may therefore succeed in a [*Bivens*] suit against a defendant-supervisor by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (alterations added). "There is no liability, under a respondeat superior theory, of an individual's supervisor or employer who is not alleged to have personally participated in the incident." *Green v. Corrections Corp. Of America*, No. 10-3062, 2010 WL 1643770, at *2 (D. Kan. Apr. 22, 2010) (citing *Rizzo v. Goode*, 423 U.S. 362 (1976)).

Here, plaintiff fails to allege facts even remotely suggesting Hininger, Conry, or Martin personally participated in any conduct which violated plaintiff's constitutional rights. Plaintiff bases

their alleged liability solely on their positions as representatives of the CCA. These allegations do not support liability under *Bivens*, even under a respondeat superior theory. Plaintiff does not allege defendants personally deprived him of access to law books or that they furthered a policy, which deprived plaintiff of such access. Nor does he claim defendants knowingly stood by while such a violation allegedly occurred. Plaintiff does argue that Hininger is liable because he signed modified contract ODT-7-C-0002, which provided for plaintiff's transfer from Maryland to the LDC. Beyond that, plaintiff posits no allegation that Hininiger knew anything about, or participated in, any conduct which allegedly deprived plaintiff of access to the courts. The act of signing the contract is not enough to establish Hininger's liability. *See Dodds*, 614 F.3d at 1199. Because plaintiff has failed to allege Hininger, Conry, or Martin personally participated in the alleged constitutional deprivations, the claims against them must be dismissed.

Plaintiff gets closer to alleging personal participation of Richardson, yet still fails to state a claim against him. Specifically, plaintiff contends Richardson, in his position as warden of the LDC, denied plaintiff his right of access by allowing a disruptive inmate to control and possess law books. Plaintiff does not allege Richardson personally deprived him of access, thus, plaintiff appears to be arguing Richardson is liable as a supervisor for another inmate's conduct. Even assuming, as the court must in a motion to dismiss, that a disruptive inmate did take certain law books, Richardson could not be liable to plaintiff under a right of access claim, at least not on the facts pled here. If Richardson had in some way authorized or affirmatively allowed the inmate to withhold law books from plaintiff, thus, denying him access to the courts, the situation would be different. *See Strope v. Cummings*, No. 06-3021, 2008 WL 508698, at *2 (D. Kan. Feb. 22, 2008) (denying a portion of defendants' motion to dismiss because plaintiff alleged sufficient facts to support the inference that

defendants' inaction caused plaintiff's harm). That is not the case here. Plaintiff has failed to plead facts which show defendant Richardson personally participated in the alleged constitutional violations and his § 1983 suit must be dismissed. Nevertheless, the court analyzes plaintiff's equal protection and access to the courts claims below.

4. Equal Protection Claim

"Equal protection 'is essentially a direction that all persons similarly situated should be treated alike.'" *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 659 (10th Cir. 2006) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Plaintiff alleges that he and other Maryland inmates were treated differently because they were from Maryland. Because plaintiff does not allege he was treated differently based on a suspect classification, he must prove "the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose." *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994); *see White v. Colorado*, 157 F.3d 1226, 1234 (10th Cir. 1998) ("Neither prisoners nor indigents constitute a suspect class.") (citations omitted).

Plaintiff bases his equal protection claim on the following statement: "The Maryland inmates (plaintiff) were/are being judged for being convicted (juvicated) prisoners from Maryland instead of their (plaintiff) non involvement in a criminal incident." (Dkt. 12, para. 15). Liberally construing plaintiff's Complaint, there are two possible equal protection claims he may be raising: First, during his administrative segregation he was treated differently than inmates in the general prison population and second, that he was treated differently from other inmates in administrative segregation.

Under the first theory, plaintiff's claim fails because, by definition, administratively segregated inmates are not similarly situated from the general population. *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006). Even if plaintiff was considered similarly situated to inmates in the general population, the LDC's decision to segregate plaintiff was "reasonably related to some legitimate penological purpose." *Templeman*, 16 F.3d at 371. Prior to plaintiff's arrival, several Maryland inmates attacked and assaulted two guards. The LDC determined it was in the interest of safety and security to house the Maryland inmates in discretionary segregation, regardless of their involvement in the assault. *See O'lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (stating deterrence of crime, rehabilitation of prisoners, and institutional security are all valid penological interests); *Ware v. Nelson*, No. 95-3470, 1998 WL 154585, at *3 (D. Kan. Mar. 20, 1998) (stating the elimination of unsanctioned prison groups is a legitimate penoligical purpose). Under the second theory, plaintiff has simply not alleged any facts showing he was treated differently from other inmates in administrative segregation, and his equal protection claim on this theory fails. Therefore, under either approach, plaintiff simply fails to establish he was treated differently from others similarly situated. Even if he was treated differently, the court finds the difference in treatment was reasonably related to a legitimate penological purpose.

5. Access to the Courts

Plaintiff also asserts a claim that defendants denied him access to the courts while he was in the LDC. Plaintiff generally argues he was denied access to legal materials and specifically argues Richardson allowed a disruptive inmate to have the law books in his possession and that plaintiff suffered an actual injury to his Maryland state case as a result.

"The constitutional right of access to the courts is guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments." *Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992). In *Bounds v. Smith*, the Supreme Court held that "the fundamental constitutional right of access to courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. 817, 828 (1977). To establish a claim of denial of access to the courts an inmate must demonstrate actual injury. *Lewis v. Casey*, 518 U.S. 350, 351 (1996) ("[T]he inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim."). "Actual injury consists of 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Mashaney v. Call*, No. 09-3105, 2010 WL 5463879, at *9 (D. Kan. Dec. 29, 2010) (quoting *Lewis*, 518 U.S. at 348). "[A]n inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense." *Lewis*, 518 U.S. at 351. However, "[t]he inmate can satisfy this standing requirement by showing the defendant 'hindered [his] efforts to pursue a nonfrivolous claim.'" *Harmon v. Keith*, 383 Fed. App'x 770, 771 (10th Cir. 2010) (quoting *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996)).

Plaintiff's most concrete allegation of a lack of access to the courts is that Richardson allowed "a convicted criminal, a disruptive inmate (Plaintiff exhibit: C) to have the law books in his possession (Plaintiff exhibit: X) giving him the power to dictate over Plaintiff and provide legal assistance." (Dkt. No. 98, pg. 4, para. 1). Although plaintiff does not assert this claim in his most recent Complaint, the court construes his pleadings liberally and will allow incorporation of any

claims stated in his prior Complaints. Nonetheless, plaintiff's claim fails because he does not connect the actions of the disruptive inmate to any actual injury to his Maryland state case. The closest plaintiff comes to alleging actual injury is that he was unable to respond to a motion for extension of time filed by the Maryland State Attorney. (Dkt. No. 1, pg. 8, para. 32).[9] Plaintiff assumes that if he had responded to the motion he would have been successful and that his inability to respond constituted an actual injury. Specifically plaintiff stated, "Once the state would have had to respond to or responded in accordance with Maryland law (15 days) exhibit O, then the court would have set an [sic] court date to the [sic] dispute the facts. Where plaintiff could've argued/proved that his case is in the interest of justice and of extra ordinary cause." (Dkt. No. 12, para. 3). However, plaintiff fails to show how his lack of response was due to any wrongdoing by the defendants or lack of access at the LDC. Even more, plaintiff's ability to oppose an extension of time motion does not constitute the actual, imminent injury required under *Bounds and Lewis*. *See Lewis*, 518 U.S. at 351; *Bounds*, 430 U.S. at 828. Therefore, because plaintiff has failed to plead an actual injury under his lack of access claim, this claim fails and is dismissed with prejudice.

6. Exhausting Administrative Remedies

Last, the court analyzes defendants' argument that plaintiff failed to exhausted his administrative remedies prior to filing his federal lawsuit, even though his claims otherwise fail. Because the court has considered materials attached to the several motions filed by each of the parties, it decides this portion of plaintiff's motion under the request for summary judgment

---

[9]Plaintiff argues that the Maryland State Attorney filed his motion out of time, however, the motion, which sought an extension to respond to plaintiff's post-conviction relief motion. was not filed out of time.

contained therein. *See Teton Millwork Sales v. Scholssberg*, 311 Fed. App'x 145, 149 (10th Cir. 2009); *see also Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) (district court's dismissal under Rule 12(b)(6) of a prisoner's complaint filed pro se characterized as "irregular" when court had not limited its review to the complaint).

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hosp.*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Nat. Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Id.* Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing

that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in

*Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose

of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows

it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

In 1995, Congress enacted the Prison Litigation Reform Act (PLRA) to, among other things,

mandate early judicial screening of prisoner complaints and require exhaustion of those complaints

prior to filing suit in federal court. *Jones v. Bock*, 549 U.S. 199, 202 (2007); 42 U.S.C. § 1997e *et*

*seq*. Exhaustion of administrative remedies is "no longer left to the discretion of the district court,

but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). The exhaustion provision states: "No

action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted." 42 U.S. § 1997e(a) (2000). Proper

exhaustion requires "*compliance with the agency's deadlines and other critical procedural rules*."

*Woodford*, 548 U.S. at 90 (emphasis added). "To exhaust administrative remedies an inmate must

properly comply with grievance procedures; substantial compliance is insufficient." *Fields v. Okla.*

*State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007). However, defendant waives the exhaustion

requirement if it considers plaintiff's defective filings on the merits. *See Ross v. County of*

*Bernalillo*, 365 F.3d 1181, 1186 (10th Cir. 2004)*, overruled on other grounds by Jones v. Bock*, 549

U.S. 199.

A prisoner's failure to satisfy § 1997e(a)'s exhaustion requirement is an affirmative defense

that must be pled and proved by the defendant. *Jones*, 549 U.S. at 216. To sustain that burden, a

defendant must prove administrative remedies were, in fact, available and that plaintiff failed to

exhaust these remedies. *Purkey v. CCA Detention Center*, 263 Fed. App'x 723, 726 (10th Cir. 2008). If the defendant meets this burden, the burden shifts to plaintiff to demonstrate the existence of a disputed material fact. *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

There is an exception to the exhaustion requirement if the plaintiff has been prevented from filing a grievance or the facility failed to answer the grievance. *Baldauf v. Garoutte*, 137 Fed. App'x 137, 141 (10th Cir. 2005) ("[I]f a prisoner is hindered from utilizing the grievance procedure (it) is *not available*.") (emphasis added). Plaintiff has the burden of proving exhaustion was impeded. *See McKeighan v. Corrections Corp. of America*, No. 08-3173, 2010 WL 3913227, at *6 (D. Kan. 2010).

The defendants have properly carried their burden by proving administrative remedies are available. The LDC has implemented a grievance procedure to address several types of inmate complaints. First, an inmate is required to file an Informal Grievance within seven days of the alleged incident. If the inmate is not satisfied with the outcome of the response to the Informal Grievance, the inmate may file a Formal Grievance within 5 days of the response date listed on the Informal Grievance form. The inmate must complete page 1 of Form 14-5B Inmate/Residence Grievance Form and place it in a sealed envelope marked "Grievance." It is then reviewed by a Grievance Officer, assigned a number, and forwarded to the appropriate staff member for response. Inmates will receive responses within 15 days. At this point, an inmate may decide to appeal the decision of the Formal Grievance by completing the appeal section of Form 14-5B and resubmitting the grievance. The inmate must file the appeal within 5 days of the response date listed on the Formal Grievance. The Grievance Officer then forwards the appeal to the Warden for review and response. Inmates receive responses within 15 days, and that decision is final.

The defendants also have proved that plaintiff failed to exhaust these remedies. Plaintiff submitted his Informal Grievance on August 28, 2009, over two months after he alleges the wrongdoing first occurred. The prison accepted his grievance and responded on September 15. *Ross*, 365 F.3d at 1186 ("If a prison accepts a belated filing, and considers it on the merits, that step makes the filing proper for purposes of state law and avoids exhaustion, default, and timeliness hurdles in federal court."). However, plaintiff failed to submit a timely Formal Grievance, thus, failing to properly exhaust his administrative remedies. He completed a Formal Grievance on September 28, more than a week after the grievance was due. Even if he submitted the Formal Grievance, which is unclear from the record, the prison did not respond. Therefore, plaintiff failed properly to exhaust his administrative remedies as required by the PLRA, and his claims must be dismissed on this ground. *See Woodford*, 548 U.S. at 93.

IT IS ACCORDINGLY ORDERED this 31st day of March 2011, that: Defendant J. Michael Stouffer's Motion to Dismiss Amended Complaint (Dkt. No. 99); defendant Scott P. Stermer's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. No. 101); and defendants Steven Conry, D.T. Hininger, Charlie Martin, and Shelton Richardson's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (Dkt. No. 104) are granted. Plaintiff's Motions to Dismiss or Motions for Summary Judgment against all defendants (Dkt Nos. 50, 53, 54, 59, 63, 89, 92) and Emergency Motion to Order Execution of Plaintiff's Injunctive Relief (Dkt. No. 94) are denied. Plaintiff's claims against Stouffer and Stermer are dismissed without prejudice. Plaintiff's claims against Hininger, Conry, Martin, and Richardson are dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's Motion to Amend Complaint (Dkt. No. 110) is denied.

s/ J. Thomas Marten<br>J. THOMAS MARTEN, JUDGE